## In the Matter of the Estate of ANNA M. BECKETT, Deceased.

Surrogate's Court, Bronx County, December 2, 1938.

*Joseph Henry Cohen,* for Alois Beckett, petitioner.

*Herbert J. Cuskley,* for the respondents.

HENDERSON, S. The petitioner herein seeks to compel the administrator *c. t. a.* to account. The answer denies that the petitioner is a person interested in the estate. The determination of that question involves a construction of paragraphs " third " and " fourth " of the will. Paragraph " third " reads:

" *Third.* I give, devise and bequeath to my dear son, Alois Beckett, my real property situated at 1050 Clay Avenue, Bronx, New York City, together with the furnishings in the house on said property provided that the said Alois Beckett is in my custody at the time of my decease. In the event that Alois is not in my custody at the time of my decease then I give, devise and bequeath the said real property and the furnishings of the house situated thereon to my beloved sister, Emily Kunkel."

The decedent was the widow of Edward P. Beckett, who died August 6, 1928. His first wife died prior to his marriage to the decedent and the petitioner is the son, the issue of the earlier union. The decedent became the administratrix of Edward's estate and applied for guardianship of the person and the property of Alois E. Beckett, the petitioner, who was an infant at the time. The application was opposed by Alois A. Berman, the maternal grandfather. Upon consent, the grandfather and the widow were appointed coguardians. The will was made on August 5, 1929, which was subsequent to the issuance of letters of guardianship. On May 13, 1931, Alois A. Berman petitioned for leave to resign. He was permitted to resign and his letters revoked on June 19, 1931. In June, 1932, the infant petitioned for the removal of the decedent as guardian, to which she consented. The decedent then filed a petition for the judicial settlement of her account as guardian and for leave to resign. By decree of October 7, 1932, her account was settled and she was permitted to resign. Thereafter letters of guardianship were issued to the maternal grandfather who continued

as such until the infant attained his majority on July 4, 1937. The decedent herein died on September 22, 1936.

The petitioner admits that he was not in the custody of the decedent at the time of her decease. It does not appear that any one knew of the provisions of paragraph " third " except the testatrix and those concerned in drafting the will. The petitioner contends that the condition attached to the devise be disregarded or nullified because it " (1) has a tendency to disrupt the family relationship and thereby to offend the recognized public policy in favor of encouraging the family relationship, or (2) has a tendency to interfere with the exercise by the Surrogate of his obligation and duty to determine the question of custody and the welfare of the infant, or (3) where the testatrix had acquiesced in the non-compliance by the infant with the condition as contained in her will, or (4) where compliance with the condition by the infant has been made impossible by the action of the Court."

There is no ambiguity in the " third " paragraph of the will. The testatrix may have felt obligated to place her protecting arm about the orphaned son of her late husband. She offered to take the responsibility for his guardianship, and consented to joint letters when those of the petitioner's blood requested it. When the maternal grandfather was relieved of the responsibilities which he had sought and assumed, she assumed all the burdens of the guardianship as she had offered to do in the first place. When the petitioner became of an age that he needed little personal care, and application was made by him for her removal and the appointment of his grandfather once more, she acceded to his wishes and stepped aside. By provision of her will, if at the time of her death she was responsible for the well-being of her husband's child, he was to be treated more generously than if that obligation had been assumed by his blood relations. If no question of public policy or illegality is involved, the testatrix had the right to attach any condition to her gift. (*Matter of Hughes*, 225 App. Div. 29; affd., 251 N. Y. 529; *Oliver* v. *Wells*, 134 Misc. 893.)

In the cases cited by the petitioner the beneficiary was required to do something or to refrain from doing something after the donor's death in order to receive or to retain the legacy. Those cases hold that the various conditions attached to the vesting or retention of the legacies involved tended to encourage the disruption of the family relationship. (*Matter of Forte*, 149 Misc. 327; *Matter of Carples*, 140 id. 459; *Matter of Anonymous*, 80 id. 10; *Matter of Boulter*, 91 L. J. Ch. 250.)

The instant case is analogous to *Matter of Hughes* (*supra*). Nothing that the petitioner might do after the decedent's death could affect the devise. There was no attempt to influence the

conduct of the petitioner during the lifetime of the testatrix. It does not appear that he knew of the devise, so that its provisions could have no effect upon his conduct. The contention that such a provision tends to interfere with the exercise of the court's discretion in the determination of questions respecting guardianship is unfounded where, as in this case, the surrogate who passed upon all such matters was unaware of the existence of any will. The intention of the testatrix is clearly expressed and does not offend against public policy. Emily Kunkel is the beneficiary of the property devised by paragraph " third."

The language of paragraph " fourth " is:

" *Fourth.* I give; devise and bequeath to my son, Alois Beckett, the jewelry which belonged to his father."

The petitioner claims to be entitled to a certain diamond ring and a silver tea set which was presented to his father by a fraternal organization. It appears that after the death of the petitioner's mother, his father had her engagement ring made into a stickpin. The diamond from the stickpin was later used in making a dinner ring, which was worn by the decedent. There is testimony to the effect that the testatrix said that she intended to keep the diamond for the petitioner. In any event, the testatrix provided in her will that the petitioner should have " the jewelry which belonged to his father." The stone in question did belong to Edward P. Beckett, although the other component parts of the dinner ring did not. The petitioner is entitled to the diamond, which was originally used in his mother's engagement ring, but not to the dinner ring.

The tea set does not pass to the petitioner. I know of no authority which classifies a tea set as jewelry.

One other question remains: The petitioner contends that irrespective of the terms of the will, the real property attempted to be devised in paragraph " third " belongs to him. Legal title was in the decedent, but he alleges she held it under a constructive trust for the benefit of her deceased husband. He alleges in his petition that Emily Kunkel, as executrix, and Frank L. Kunkel, as administrator *c. t. a.*, collected rents and profits from the real property attempted to be devised in paragraph " third." The estate of Anna M. Beckett is solvent and no order was entered permitting either the executrix or the administrator *c. t. a.* to manage the real property. The property in question was specifically devised to a person competent to take it. This court has jurisdiction to determine the question of ownership of real property only where it is incidental to the determination of the ownership of money. (*Matter of Poth*, 155 Misc. 116.) In *Matter of Drellich* (254 App. Div. 380, 381) the court said: " If, however, it is sought

to surcharge the administrator by objections filed to the account for rents received from that property, or if it shall appear that the rights of creditors of the deceased are involved, the surrogate may then entertain jurisdiction to determine the ownership of the real property as an incident of his power to administer ' matters relating to the affairs of decedents.' " (Surr. Ct. Act, § 40.) Any rents collected by Emily Kunkel were collected in her individual capacity and not as executrix, and any rents collected by Frank L. Kunkel were collected by him as administrator of Emily Kunkel and not as administrator *c. t. a.* of Anna M. Beckett. None of the rents alleged to have been collected were received by either fiduciary as a representative of this estate. Under these circumstances, the court is without jurisdiction to determine the ownership of the real property here involved in this proceeding.

The petitioner is interested in this estate only to the extent of the diamond stone bequeathed in paragraph " fourth." If such stone is turned over to the petitioner within five days after the entry of the order herein, the petition for an accounting will be denied; otherwise, it will be granted. Settle order.